BERG, District Judge,
Dissenting.
Because I view what happened at the two supervised release revocation proceedings differently from the majority, I respectfully dissent.
The district court held two proceedings to address the petition for revocation of supervised release, one on May 20, 2014 and a continued hearing on June 12, 2014. The majority’s view is that Nesler’s plea and waiver of his hearing rights that occurred during the May 20 proceeding continued to have legal effect during the second hearing on June 12.
I respectfully disagree because I do not think Nesler completed any guilty plea to the supervised release violation at the first-hearing on May 20, and the waiver he made of his hearing rights was riot valid because it was not made with knowledge of his possible sentence;
Likewise at the second hearing on June 12, Nesler did not admit to the supervised release violation. Instead, the government presented evidence showing that Nesler had entered a guilty plea to another offense as proof that he had violated his supervised release conditions. The district court did not permit Nesler to present any evidence in opposition during the second hearing, and Nesler did not personally waive his right to do so. Because Rule 32.1 of the Fed. R. Crim. Proc. entitled Nesler to present evidence in mitigation, I would reverse the district court’s order revoking Nesler’s supervised release, and remand for a new revocation hearing.
During the first supervised release violation hearing on May 20, 2014, the district court began by conducting a thorough colloquy in which Nesler was advised of his hearing rights and expressed his intention to admit to the violation. However, as the hearing continued, it became clear that neither the government nor defense counsel was certain as to the maximum sentence that Nesler was facing. Defense counsel maintained that the maximum sen *258 tence Nesler could receive was 24 months, while the district court and the government believed the maximum sentence was 48 months. In pointing out this uncertainty the district court wisely advised the parties that the plea should not be taken if Nesler’s maximum exposure was not clearly explained to him. The court stated:
THE COURT: His lawyer is telling him it’s 24 months and I’m telling him it’s 48, that’s not very helpful. And I can’t tell you we think it might be 48, that’s probably not the best way to do that either. I don’t mind going ahead and going through the factual determinations as to whether or not the defendant wishes to plead guilty, but if he pleads guilty, he’s going to have to plead guilty with the understanding that he may be sentenced to four years, we would reserve the final determination, but if that is going to affect his decision whether or not he wishes to plead guilty, then we shouldn’t proceed.
Because neither side could say with certainty what Nesler’s exposure was, the district court correctly suspended the proceedings before any guilty plea was taken, noting that the length of the possible sentence might well affect Nesler’s decision as to whether it was in his interest to admit the violation or ask for a hearing. (‘77// he pleads guilty, he’s going to have to plead guilty with the understanding that he may be sentenced to four years ...)
Realizing that the lack of information concerning Nesler’s sentence exposure rendered any plea or waiver invalid, the Court told the parties they would have to stop the hearing, do some research and reconvene after the sentence question was answered:
THE COURT: I think the best thing to do, and it is really not the—the most expeditious thing is to go ahead and change the plea and then figure it out, which is terrible because the defendant is allowed to rely on the representation regarding the maximum sentence available in making his decision. If he believes it’s two years, he might make one decision. If he believes it’s four, he might make another. I’m sorry, guys, I think that has to be briefed. Also, the probation needs a chance to look it up, I need a chance to look it up and the government needs a chance to look it up. So we will come back. We have got time. We have got plenty of time.
Rather than completing what would have been an “unknowing” plea, in which Nesler would have been pleading guilty without knowing what the maximum sentence could be, the district court stopped the hearing and told the parties to look it up and come back.
Thus, the plea-taking process with its accompanying waiver of rights colloquy, begun on May 20, was never completed. The district court said as much when it pointed out that “the defendant is allowed to rely on the representation regarding the maximum sentence available in making his decision” and spoke of how knowledge of the possible sentence could affect Nesler’s ability to “make one decision [or] ... another.” It is clear that no guilty plea was completed on May 20. The parties went back to the drawing board to figure out the maximum sentence that Nesler might receive, so that he could make an informed decision on whether he wished to plead guilty or contest the violation.
At the second violation hearing, held on June 12, 2014, it was revealed that Nesler actually faced a 60-month mandatory minimum sentence for violating his supervised release, a much greater sentence than the parties or the district court anticipated before. In the second hearing, the district court did not ask Nesler whether he still wished to waive his hearing and admit to *259 the violation in light of the fact that he was facing a much higher, mandatory sentence. Instead, at the outset of this hearing, the government introduced as an exhibit the change of plea form showing that Nesler had pleaded guilty to a child porn possession offense. Because the supervised release violation was for committing another offense while on supervision, the government argued that the introduction of the change of plea form was “dispositive of the guilt issue,” and Nesler’s counsel agreed. Counsel and the district court then engaged in a lengthy discussion on the calculation of Nesler’s sentence for the violation.
At no time during the second hearing did the district court ask Nesler if he wished to admit to the violation, nor did it ask him if he agreed to waive his right to a hearing. Both counsel and the district court seemed to be operating under the assumption that the change of plea form left “no dispute as to the facts.” When the district court asked Nesler directly what his position was, Nesler raised questions about some of the evidence supporting the charges to which he had recently pled guilty. The district court acknowledged that Nesler appeared to be raising discrepancies in the evidence concerning the “basis in fact” for the guilty plea that was the offense constituting his violation of supervised release conditions. But the district court did not permit Nesler to present any evidence or call any witnesses. Instead, the district court relied on Nesler’s guilty plea in the underlying case to conclude that “the facts have been admitted” and adjudged Nesler guilty of the violation.
The rest of the hearing was primarily devoted to sentencing issues, and the district court imposed a sentence of five years. Near the end of the hearing, the district court was trying to clarify whether Nesler was satisfied with his counsel, but Nesler took the opportunity to continue to question the proof relating to the case in which he had pled guilty, and he appeared to be asking if he could present witnesses and evidence to rebut the charged violation:
THE DEFENDANT: Did I not pass the polygraph-man test? Didn’t I pass that? I went and took that test. Everybody else failed it in the whole class except me. I said I wouldn’t fail it, and I didn’t. Call the man up. I was trying to get him at least to be a witness. I can’t get no—. IT forensics let me look into the actual matter of the issues and then things might come out and look a little different. That’s all I’m asking.
The procedures that a district court must follow when revoking or modifying a defendant’s term of supervised release are set forth in Federal Rule of Criminal Procedure 32.1(b). That rule states:
Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
(A) written notice of the alleged violation;
(B) disclosure of the evidence against the person;
(C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
(D) notice of the person’s right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
(E) an opportunity to make a statement and present any information in mitigation.
Fed. R. Crim. P. 32.1(b)(2).
When the district court reconvened to address the supervised release violation on *260 June 12, 2012, in light of the much greater sentence exposure that was not known at the time of the first hearing, it needed to give Nesler the opportunity to decide whether he wanted to make a knowing and voluntary admission to the supervised release violation, and waive his due process rights to a hearing, or whether he wanted to contest the violation and invoke his right to a hearing, to present evidence, and challenge the government’s proof, as required by Rule 32.1(b)(2). What happened however, • was that the district court allowed the government to present evidence of Nesler’s having committed another offense while on supervised release (the change of plea form), declared Nesler’s plea in the other case to be “dispositive,” and dispensed with seeking a waiver, asking for an admission, or conducting a hearing. In the second proceeding, Nesler was neither advised that he could have a hearing, nor was he given the opportunity to present testimony and evidence, or allowed to offer anything in mitigation.
I recognize that district courts are not required to scrupulously follow the same plea-taking procedures of Fed. R. Crim. Proc. 11 when conducting supervised release violation hearings. See United States v. Melton, 782 F.3d 306, 311 (6th Cir. 2015). Instead, whether a defendant has knowingly and voluntarily admitted to a supervised release violation and waived the right to a hearing is considered under the “totality of the circumstances.” Id. at 312. In Melton, the defendant argued—similarly to Nesler—that his admission to a supervised release violation was involuntary because the district court did not explicitly inform him of his full sentencing exposure. We affirmed the district court, and held that Rule 11 is not applicable to revocation hearings, and that the defendant knowingly and voluntarily waived his rights when considering all the surrounding circumstances. The difference, however, between the present case and Melton is that the maximum term of imprisonment was known in Melton, and was set forth in a report prepared by a probation officer. While the district court in Melton may not have explicitly explained the potential penalty on the record, the defendant stated that he reviewed that report, discussed it with his attorney, and confirmed to the magistrate judge conducting the revocation hearing that he understood its contents. Id. at 312. In this case, by contrast, no one knew at the first hearing the maximum penalty Nesler was facing. Under the totality of these circumstances, I cannot conclude that Nesler knowingly and voluntarily waived his right to a revocation hearing at either the first or the second proceeding held before the district court.
Given that Nesler had in fact pled guilty to the underlying child porn offense, it is perhaps unlikely that he could have presented any evidence at a supervised release hearing capable of overcoming the proof that he had committed the violation. While Nesler attempted to withdraw the guilty plea that formed the underlying basis of the violation, that motion to withdraw the plea was denied by the district court, and that conviction has since been affirmed on appeal.* Even though remanding this case for a new hearing might well result in the same outcome, Fed. R. Crim. Proc. 32;1 entitled Nesler to certain procedural rights that were not accorded to him.
For these reasons, I would reverse and remand for a new revocation hearing.

 See United States v. Nesler, Case No. 15-5607 (6th Cir. June 27, 2016).